**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TINA WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-578-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff, Tina Watkins ("Watkins"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that

Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

**Background**

Watkins was thirty-eight years old on the amended alleged date of onset of disability and forty-one on the date of the Commissioner's final decision. [R. 1, R. 150 (Ex. 1D)]. She has a

---

she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

high school education. [R. 32, R. 169 (Ex. 2E)]. She has previous experience as a cashier, a habilitation training specialist and a plastic molder. [R. 169 (Ex. 2E)]. In her application, she claimed to be unable to work as a result of social anxiety, depression, ADHD, "Anger/Explosive problem," and bipolar disorder. [R. 1`68 (Ex. 2E)].

## The ALJ's Decision

In his decision, the ALJ found that Watkins last met insured status requirements on December 31, 2011, but not thereafter, and, at Step One, that she had not engaged in any substantial gainful activity since January 10, 2012, the application date. [R. 13]. He found at Step Two that Watkins had severe impairments of affective disorder and anxiety disorder. *Id.* At Step Three, he found that the impairments did not meet or medically equal any listing. *Id.* He concluded that Watkins the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonextertional limitations:  The claimant is able to perform simple work with routine supervision.  The claimant is able to relate to coworkers and supervisors for work related purposes only.  She should have no contact with the general public.  She is able to adapt to a work situation.

[R. 15]. At Step Four, the ALJ determined that Watkins had no past relevant work. [R. 18]. At Step Five, he found that, considering Watkin's age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform, including hand packager (medium exertion, unskilled, SPV 2, DOT #920.587-018, 18,000 positions in the region and 220,000 positions nationally); laundry worker (medium exertion, unskilled, SVP 2, DOT #361.685-018, 15,000 positions in the region and 190,000 positions nationally); dishwasher (medium exertion, unskilled, SVP 2, DOT #318.687-010, 19,000 positions in the region and 280,000 positions nationally); laundry sorter (light exertion, unskilled, SVP 2, DOT #361.687-014, 12,000 positions in the region and 177,000

positions nationally); assembler (light exertion, unskilled, SVP 2, DOT #706.684-022, 13,000 positions in the region and 180,000 positions nationally); and trimmer (sedentary exertion, unskilled, SVP 2, DOT #692.685-266, 6,500 positions in the region and 95,000 positions nationally). [R. 19].

Accordingly, the ALJ found that Watkins had not been under a disability since January 10, 2012, the date the application was filed. *Id.*

### Plaintiff's Allegations

On appeal, Watkins asserts that: (1) the ALJ failed to properly consider all of the evidence; (2) the ALJ failed to properly consider the opinion of consultative psychologist Jeri Fritz, Ph.D; and (3) the ALJ failed to properly consider plaintiff's credibility.

### Analysis

### 1. Consideration of Evidence

Watkins contends the ALJ failed to properly consider records from CREOKS Behavioral Health Services, a primary treating source, because he discussed only one record from that provider.[2] In particular, she contends the GAF and CAR scores in the CREOKS records support her claim of totally disabling depression and anxiety. However, the ALJ expressly stated that he considered the entire record. [R. 11]. The court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Moreover, the ALJ is not required to "discuss every piece of evidence." *Wall*, 561 F.3d at 1067 (citing *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007). "On the contrary, [the court] will generally find the ALJ's decision adequate if it discusses the

---

[2] Specifically, the ALJ stated that on January 2, 2014, Watkins reported she was dealing with feelings of depression and anxiety, and was doing better until graduating from the Anna McBride program the previous month. She was assessed with depression and anxiety disorder and assigned a GAF of fifty, with the highest in the past year being sixty-two. [R. 19, R. 656 (Ex. 12F)].

4

'uncontroverted evidence' the ALJ chooses to rely upon and any 'significantly probative evidence' the ALJ decides to reject." *Id.*

Additionally, the ALJ noted that Dr. Fritz had assigned Watkins a GAF score of forty-five, and acknowledged that a score of 41-50 "indicates serious symptoms or any serious impairment in social, occupational, or school functioning." [R. 17]. However, he concluded that "[a] global assessment of functioning score in the severe range is not preclusive of substantial gainful activity," and stated that "[t]he limitations identified by Dr. Fritz are consistent with the above residual functional capacity, which allowed for the performance of the jobs identified below." *Id.*

In this case, no treating source opined that Watkins was unable to work as a result of her mental impairments. And while the ALJ acknowledged she suffered from mental illness, he noted that "with medication management and compliance, claimant's symptoms improve greatly." [R. 16, R. 467-473 (Ex. 9F)]. Further, he restricted her to performing simple work with no contact with the general public and to relating to coworkers and supervisor for work related purposes only. [R. 14-15].

The Court concludes that substantial evidence supports the ALJ's decision.

### 2. Consideration of Consultative Psychologist's Opinion

Consultative psychologist Dr. Fritz stated in her report that Watkins' attention and concentration appeared to be impaired but she demonstrated the ability to understand, retain, and follow simple directions and "she most likely could perform simple, repetitive tasks." [R. 289 (Ex. 4F)]. Additionally, she opined that "her ability to handle the stress of day to day interactions was judged to be poor," and that "[s]he might benefit from a work hardening supportive employment program." *Id.*

5

Watkins complains that while the RFC limited her to "simple work," it did not include a restriction to "repetitive" tasks or a limitation addressing her inability to handle stress, and it failed to require a work hardening supportive employment program.

Watkins' arguments are not convincing. While the RFC did not include a restriction to repetitive tasks, the jobs identified by the vocational expert are all described as having the "R" temperament, which means "performing REPETITIVE or short-cycle work." (emphasis in original).[3] Accordingly, any error in this respect is harmless. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).

Further, the ALJ addressed her problem with the "stress of day to day interactions" by restricting Watkins to relating to coworkers and supervisors "for work related purposes only" and allowing *no* interaction with the public. [R. 15]. Finally, the statement that claimant "might benefit from a work hardening supportive employment program" is not a specific functional limitation. It is unclear how this recommendation could have been incorporated into an RFC.

The RFC adopted by the ALJ reasonably incorporated all functional limitations identified by Dr. Fritz.

### 3. Credibility Determination

Watkins contends the ALJ erred in evaluating her credibility. "[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence."  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)

---

[3] Specifically, the Dictionary of Occupational Titles ("DOT"), classifies the relevant positions as follows:  hand packager, DOT #920.587-018, 1991 WL 687916; laundry worker, DOT #361.685-018, 1991 WL 672987; dishwasher, DOT #318.687-010, 1991 WL 672755;  laundry sorter, DOT #361.687-014, 1991 WL 672991; assembler, DOT #706.684-022, 1991 WL 678774. *See also Beck v. Colvin*, 2015 WL 757554, at *22 (M.D. Penn. Feb. 23, 2015) (unpublished) (the "Temperament factor of "R," . . . is defined as "performing a few routine tasks over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption." (citing U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs 10-2 (1991)).

(internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In assessing Watkins' credibility, the ALJ stated:

[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[R. 20]. He supported this assessment by citing the report of Dr. Fritz, discussed above and, *inter alia*, the following evidence:

- On March 16, 2012, after being admitted to Wagoner Community Hospital on an emergency detention order, claimant was stabilized on medication and discharged home, having shown good resolution of target symptoms. [R. 16, R. 467-473]. The ALJ stated, "This evidence shows that with medication management and compliance, the claimant's symptoms improved greatly." *Id.* Additionally, he concluded, "This evidence does not support any greater limitations than those identified in the above residual functional capacity." *Id.*

- On December 3, 2013, Watkins presented to OSU physicians, reporting anxiety but denying depression and insomnia. [R. 17, R. 432-437 (Ex. 7F)]. She was oriented to person, place, time and situation; she exhibited appropriate mood and affect, but poor insight and judgment. When she returned on January 15, 2014, she was oriented to time, place, situation and person and demonstrated appropriate affect. *Id.* The ALJ stated that "[i]t is reasonable to assume that if the claimant's impairments were as severe as alleged, they would be present on examination." *Id.*

- Based on a review of the record, state agency reviewing psychologist CMK opined that claimant demonstrated the ability to understand, retain and follow simple instructions and that while her attention and concentration appeared impaired, she could perform simple repetitive tasks and her ability to relate to others, including co-workers and supervisors, was estimated to be fair. [R. 81 (Ex. 3A); R. 92 (Ex. 4A)]. The ALJ gave great weight to the agency psychologist's opinion. [R. 18].

Support in the medical record is among the various factors properly considered in making a credibility determination. 20 C.F.R. §§ 404.1529, 416.929. In his decision, the ALJ discussed

the portions of the records he believed contradict Watkins' subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence. Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition).

The ALJ's decision is supported by substantial evidence, and the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Commissioner." *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Watkins is not disabled is hereby **AFFIRMED**.

ENTERED this 7th day of February, 2017.

_____
Paul J. Cleary
United States Magistrate Judge

8